[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant has filed a Motion for Contempt claiming that the plaintiff has not complied with the terms of the dissolution decree. The dissolution decree dated September 14, 1984, provided in part:
 "By way of disposition of real and personal property, the defendant shall quit claim to the plaintiff his right, title and interest in the family dwelling know as 95 Ridgewood Lane, Kensington, Connecticut, together with the contents therein, for the consideration of $15,000.00 to be paid to the defendant as follows:
 The plaintiff shall execute and deliver to the defendant a non-interest bearing promissory in said amount of $15,000.00 to be secured by a second mortgage deed to the three children of the parties, namely, Cheryl Barile, Gina Barile and Christine Barile, to become due and payable on the first happening of the following events:
1. When the plaintiff remarries;
 2. when she transfers her title to said Ridgewood Lane property, subject to the conditions hereinafter stated;
 3. if the plaintiff should predecease the defendant;
4. if the plaintiff cohabits with a third CT Page 4328 party.
 In the event, however, the plaintiff sells her present home and purchases another home, the mortgage hereinbefore mentioned shall be transferred to the second home and the plaintiff shall execute whatever documents are required and necessary to effectuate said transfer of the mortgage on the second home. In the event the plaintiff should purchase a second home and sells said home, then the note and mortgage shall become due and payable when such event occurs."
A promissory note in the amount of $15,000.00 was signed by the plaintiff made payable to her three daughters, the mortgage deed from the plaintiff to the three daughters was executed by the plaintiff, recorded in the Berlin Land Records and both documents were returned to the plaintiff. (Plaintiff and Defendant's Exhibit 1.)
The plaintiff remarried in May, 1994 but never tendered payment of the $15,000.00 to her three daughters. The defendant now files his Motion for Contempt claiming that the plaintiff enticed her three children to execute a release of the mortgage without explaining to the children that they were giving up their rights to $15,000.00 which was the intention of the defendant at the time the note and mortgage was executed.
Gina Barile, one of the daughters, testified that her mother, in 1988, asked her to go to Attorney Karanian's office to sign some papers "that had to do with the house." She was not told she was giving up her rights to $5,000.00. She did not know what she was signing. She claimed that Attorney Karanian simply explained that he needed her signature and that she trusted Attorney Karanian.
Christine Barile testified that she became 18 on May 20, 1988. Her mother, the plaintiff, asked her to sign a paper at Attorney Karanian's office and she did so five days later. (Plaintiff's Exhibit 2.) Christine discussed the matter with her father and he explained that she should get $5,000.00 because her mother remarried. The mother claimed it was her money.
Cheryl Barile, the oldest sister, said she did not CT Page 4329 know the terms of the divorce but that her mother claimed that it was her money (the plaintiff's) and not that of the defendant. The plaintiff had told Cheryl that it was her money and Cheryl believed it was unfair for her mother to give up $5,000.00 while the defendant gave nothing. She never discussed the matter with her sister.
The plaintiff argues that the claim of contempt on her part simply is not true. The wishes of the defendant were, in fact, followed out by executing both the note and mortgage directly to the three daughters, who after being requested by their mother, voluntarily executed a release of the mortgage five days after the youngest daughter became eighteen years of age.
The plaintiff further contends that since the note was never marked "paid" the daughters could still bring an action on the note but, of course, have lost the security of the mortgage securing the same.
The plaintiff further claims that although the release was signed by two daughters on one date and by other daughter on a different day, it is of no significant consequence since there is no statutory requirement that a release be dated.
Of more significance is the claim of the plaintiff that the consideration for signing the release was the love and affection which the daughters had for the defendant at the time they executed the release.
The defendant claims, inter alia, that:
 1. The note and mortgage do not comply with the Judgment of the court in that the note was not made payable to the defendant but was instead made payable directly to the children.
 2. The fact that the plaintiff waited until the youngest child became 18 before requesting a release raises a strong presumption that the plaintiff was deliberately waiting until the youngest child became 18 before requesting the release. CT Page 4330
 3. Two of the daughters testified that they did not know what they were signing although it had something to do with the house.
 4. At the most, the daughters believed that the $15,000.00 was money coming from their mother and not from their father and if that were so, it was unfair for the mother to pay $15,000.00 when the father paid nothing.
There is no question that the plaintiff has committed a fraud upon the court by representing to her daughters that the $15,000.00 was coming from the mother and not from the father. This was a false statement and was known by the mother to be false. Based on that statement, the three daughters were induced to act. The injury occurred to the defendant husband since his wishes were not followed out in accordance with the decree of divorce.
The case of Miller v. Appleby, 183 Conn. 51, 54-55,438 A.2d 811 (1901) states: . . . "The essential elements for an action in fraud . . . are: (1) that a false representation was made as a statement in fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Grayson v. Grayson, 4 Conn. App. 275, 276.
After reviewing all the testimony of all the witnesses, the court believes that the totality of the plaintiff's action constitutes a fraud both upon her three children and upon the court itself. The most persuasive act of the plaintiff was the timing of her request for the execution of the release of mortgage by the youngest daughter upon reaching the age of 18 years. It was obvious that the plaintiff waited until that time to make sure that the signing of the release would be a valid one.
Having found that a fraud has been committed the next requirement is to fashion a solution. In domestic matters our courts have stated, "The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." Pasquariello v. Pasquariello, 168 Conn. 579, 585. CT Page 4331
For the reasons set forth above, the court makes the following orders:
 1. The release executed by Cheryl Barile, Gina Barile and Christine Barile, recorded in the Berlin Land Records Vol. 280, page 836 is declared null and void and shall be so marked id in the Berlin Land Records.
 2. The mortgage from Madeline Barile to Cheryl Barile, Gina Barile and Christine Barile recorded in Vol. 238, page 427 is reinstated in full force and effect and hall be so indicated on the land records of the Town of Berlin.
After these notations have been made, the daughters are free to execute, if they so desire, a release of said mortgage if that is their wish.
Because the court has found a fraud has been committed, the defendant's counsel is awarded attorney's fees in the amount of $2,632.40 as indicated by the time sheet attached to his brief, payable on or before June 20, 1995.
The plaintiff shall also pay to the defendant all court costs incurred for the issuance of the Contempt citation.
HARRY N. JACKAWAY JUDGE, SUPERIOR COURT